**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| TYREESE LEARMOND,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY SCHUTZ, et al.,<br><br>Defendants. | **Case No. 4:26-cv-03285**<br><br>**DEFENDANT STATE OF NEBRASKA'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |

COMES NOW Defendant State of Nebraska, by and through counsel, and hereby submits this Brief in Support of its Motion to Dismiss ("Motion to Dismiss") filed November 6, 2026, in the above-captioned matter.

## INTRODUCTION

Plaintiff Tyreese Learmond ("Plaintiff") brought his First Amended Complaint and Demand for Jury Trial ("Amended Complaint") alleging various claims against eight named faculty and staff (the "Individual Defendants") of the University of Nebraska College of Law ("College of Law"), the University of Nebraska Board of Regents (the "Board"), the State of Nebraska (the "State"), the United States Department of Education Secretary Linda McMahon, the United States Department of Education, and the American Bar Association. *See* Filing No. 16 at 1–3. Although the Board is a State entity, Plaintiff named both the Board and the State as separate Defendants. *See id.* Despite naming the State as a separate Defendant, and despite amending his complaint, Plaintiff alleges no specific facts in the Amended Complaint attributing the alleged wrongs to the State itself. *See generally id.* Because Plaintiff named the Board and the State as separate

Defendants in this action, they are treated as separate Defendants in this Brief.

The State now requests the Court grant its Motion to Dismiss all claims in Plaintiff's Amended Complaint against it with prejudice.

## BACKGROUND

Plaintiff asserts fourteen causes of action in his Amended Complaint. *See* Filing No. 16 at 30–47. As to the State itself, Plaintiff asserts violations of Title VI of the Civil Rights Act for a hostile educational environment, breaches of implied contract for alleged hazing and chilled speech, negligent supervision, First Amendment violations, and violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act. *Id.* Despite voluminous allegations about the Individual Defendants, other employees of the College of Law or the University of Nebraska ("University"), and now the federal government, Plaintiff's Amended Complaint is completely bereft of any specific facts about the State. *See generally* Filing No. 16. Plaintiff's allegations are summarized below.

Plaintiff enrolled at the College of Law, with classes beginning on August 25, 2025, and was one of five black students in his class. *See id.* at 5. Plaintiff wore a suit to class each day, which he asserts made himself "uniquely identifiable" as a student. *Id.* At various times throughout the school year, various Individual Defendants or other University employees made statements to or about Plaintiff which Plaintiff asserts show animus toward him. *See generally id.* Defendant Anthony Schutz ("Professor Schutz") asked Plaintiff just prior to a contracts class on September 2, 2025, if Plaintiff was going to wear his suit every day. *Id.* at 5–6.

Plaintiff was "disheartened" by the question. *Id.* at 6. Plaintiff received a large red "X" on part of a returned assignment from his legal writing and research professor, Defendant David Dirgo ("Professor Dirgo"). *Id.* During an in-class review of the torts midterm exam, Plaintiff stated in the review that he identified different issues in an exam question than another student. *Id.* at 7. Where the other student had identified battery, Plaintiff identified negligence and strict liability. *Id.* Plaintiff's torts professor, Defendant Harvey Perlman ("Professor Perlman") asked Plaintiff, "Isn't that inconsistent with the facts of the case?" *Id.* Professor Perlman later asked Plaintiff "So if you were a lawyer and a client came to you with that issue, you wouldn't include battery [sic] in the case?" When Plaintiff responded "No," Professor Perlman said "Well, that's gutsy." *Id.* Plaintiff further alleges that Defendant Danielle Jefferis ("Professor Jefferis") wrongfully accused Plaintiff of using artificial intelligence in an assignment. *Id.* at 9. Professor Jefferis later marked the assignment complete. *Id.* In April 2026, Professor Schutz remarked that "I am wearing my suit today" prior to an event on campus. *Id.* at 16. Plaintiff was "overcome with humiliation by the encounter." *Id.*

Plaintiff characterizes these interactions and other actions as discriminatory against him due to his race. *Id.* at 30–31. Despite these assertions, Plaintiff acknowledges there were no explicit or overt racial statements made to or against him by any named Defendant. *See id.* at 30–31. Plaintiff alleges none by the State. *See generally id.*

Plaintiff also asserts he experienced and reported "hazing." *See id.* at 7, 12. Plaintiff specifically invokes Neb. Rev. Stat. § 28–311.06 for his definition of hazing. *See id.* at 35. However, no specific act of hazing, such as those defined in Neb. Rev. Stat. § 28–311.06, is alleged in the Amended Complaint. *See generally id.* Rather, Plaintiff characterizes the above and other interactions with the Individual Defendants as hazing. *See e.g., id.* at 31, ¶ 145. On October 16, 2025, Professor Dirgo commented in a class "A lot of law school is hazing ... you just have to endure it," that he had experienced it in law school, and that "this is what it takes to be a lawyer." *Id.* at 7. According to Plaintiff, this is "professed hazing[.]" *See id.* at 43.

Plaintiff further alleges he raised the issues of his mental health diagnoses of bipolar disorder and schizoaffective disorder during a meeting with Defendant Molly Brummond ("Dean Brummond") on January 16, 2026. *Id.* at 8–9. After a follow-up meeting on January 20, 2026, Plaintiff alleges he was required to register with Services for Students with Disabilities, visit a school therapist with Counseling and Psychological Services, and pursue medication management with Plaintiff's psychiatrist. *Id.* at 11. All of these are through the University system or Plaintiff's private provider(s), not the State itself.

Plaintiff was separately notified in January 2026 that he needed to have a minimum grade point average of 2.0 to maintain his enrollment after his first year of law school and that his first semester grades placed him at risk of academic dismissal. *Id.* at 8. In his first semester, Plaintiff received an "F" grade in his torts class and a "C-" grade in contracts. *Id.* at 8, 20. Plaintiff also later received a "D"

grade in his second semester civil procedure class. *Id.* at 20. Plaintiff was ultimately dismissed from the College of Law after failing to maintain the minimum grade point average for continued enrollment. *See id.* at 16.

In a meeting on June 4, 2026, Dean Brummond again notified Plaintiff he was academically dismissed, then mentioned that the College of Law has a formal readmissions process. *Id.* at 16. Dean Brummond informed Plaintiff that he may file a petition for consideration by the "readmissions committee" to be heard between July 1 and 15 or December 1 and 15, noting the committee recommends waiting at least one year to gather relevant materials and reapply. *Id.* at 16–18. The standard for readmission is that Plaintiff must show that he did not have a sufficient opportunity in his first year and that, if given another opportunity, something will be different which will make the new opportunity sufficient. *Id.* at 18–19. Plaintiff asked about alternatives to the readmission process. *Id.* at 19. Notably, Plaintiff does not allege he has applied for readmission. *See generally id.*

Crucially, none of Plaintiff's factual allegations relate in any way to the State as a separately named Defendant. The only allegations about the State itself are related to Plaintiff's tort and contract claims Plaintiff filed with the State Risk Manager ("Risk Manager") under the Nebraska State Tort Claims Act ("STCA") and Nebraska State Contract Claims Act ("SCCA"), respectively. *See id.* at 3, 22–23. Plaintiff specifically asserts the State is the "respondent" to his STCA and SCCA, claiming the filing and dispositions of his tort and contract claims put the State "on

notice" of these claims. *Id.* at 30. However, Plaintiff alleges no tortious act by or contract with the State itself. *See generally id.*

For the reasons stated below, each of Plaintiff's claims raised against the State should be dismissed with prejudice.

## LEGAL STANDARDS

### I. Sovereign Immunity

"States enjoy sovereign immunity from suits by private individuals in federal court under the Eleventh Amendment, and 'states also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court.'" *Cunningham v. Kahler*, 171 F.4th 1115, 1119 (8th Cir. 2026) (quoting *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015))) (cleaned up) (emphasis in original). A state retains its general sovereign immunity, even after removal to federal court, unless another waiver or exception applies. *Id.*

### II. Standing

"Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Iowans for Alternatives to Smoking & Tobacco, Inc. v. Mosiman*, 183 F.4th 1040, 1048 (8th Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish standing, 'the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at

560–61)). "The plaintiff bears the burden of establishing standing[.]" *Id.* "At the motion to dismiss stage, 'a plaintiff need only 'allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.'" *Id.* (quoting *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023)).

### III. Failure to State a Claim

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Geivett v. AMC Mgt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014)).

## ARGUMENT

Plaintiff's constitutional claims under 42 U.S.C. § 1983 ("§ 1983"), contract claims, tort claims, and ADA claims are barred by the State's sovereign immunity. Second, Plaintiff lacks standing to sue the State on the face of the Amended Complaint because no allegations therein show any injury in fact which are fairly attributable to the State as a separately named Defendant. Finally, Plaintiff simply

alleges no facts which plausibly show he has any claim against the State and the State is a redundant Defendant. Sovereign immunity issues are addressed in Section I below, followed by standing in Section II, then by failure to state a claim in Section III.

## I. Plaintiff's constitutional, tort, ADA and Rehabilitation Act claims against the State are barred by sovereign immunity.

The majority of Plaintiff's claims against the State are barred by sovereign immunity. There is no applicable waiver of sovereign immunity allowing Plaintiff to bring his constitutional claims against the State. Further, Plaintiff did not comply with the State's limited waivers of sovereign immunity for contract claims and the STCA does not allow Plaintiff's tort claims. Plaintiff's ADA and Rehabilitation Act claims against the State itself also fail on sovereign immunity grounds because Plaintiff does not allege conduct by the State which actually violates the Fourteenth Amendment or those statutes. The State's sovereign immunity from Plaintiff's constitutional claims is addressed first, followed by Plaintiff's contract and tort claims, then by Plaintiff's ADA and Rehabilitation Act claims.

### A. Plaintiff's constitutional claims against the State of Nebraska are barred by sovereign immunity.

"A State is not a 'person' under § 1983." *Mungai v. U. of Minnesota*, 141 F.4th 959, 967 (8th Cir. 2025) (citing *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))). Plaintiff asserts claims of "breach of implied contract – chilled speech and expression," and First Amendment "chilling." *See* Filing No. 1-1 at 26, 29–30, 32–33. "A plaintiff may

not bring a claim directly under the Fourteenth Amendment." *Mungai*, 141 F.4th at 966–67 (citing *Wax'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000)). "A claim involving the violation of the Fourteenth Amendment is construed as a claim under § 1983." *Id.*

Here, there is no exception to the State's common law sovereign immunity applicable to Plaintiff's constitutional claims. The State is not a person under § 1983 and there is no other applicable waiver of the State's sovereign immunity for these claims. To the extent Plaintiff's breach of implied contract claim for alleged chilled speech is a First Amendment claim, it is a claim under § 1983 barred by sovereign immunity for the same reasons. Because there is no applicable waiver of the State's sovereign immunity for Plaintiff's constitutional claims, such claims are barred and should be dismissed with prejudice.

### B. Nebraska's limited statutory waivers of its sovereign immunity do not apply to Plaintiff's contract and tort claims as alleged.

"Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are *strictly construed* in favor of the sovereign and against the waiver." *Zawaideh v. Nebraska Dep't of Health & Hum. Servs. Regul. & Licensure*, 285 Neb. 48, 54–55, 825 N.W.2d 204, 211 (2013) (emphasis added). "A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction." *Id.*, 285 Neb. at 55, 825 N.W.2d at 211. *See also eScholar LLC v. Nebraska Dep't of Educ.*, 497 F. Supp. 3d 414, 424 (D. Neb. 2020) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06 (1990))

("And the Court will give effect to a State's waiver only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."). "[T]he burden rests with [the party invoking the waiver] to demonstrate how the State has waived sovereign immunity[.]" *Zawaideh*, 285 Neb. at 55, 825 N.W.2d at 212. *See also Burke v. Bd. of Trs. of Nebraska State Colleges*, 302 Neb. 494, 506, 924 N.W.2d 304, 313 (2019) (contract claims); *Davis v. State*, 297 Neb. 955, 979, 902 N.W.2d 165, 186 (2017) ("But when a plaintiff's complaint shows on its face that a claim is barred by one of the exceptions, the State's inherent immunity from suit is a jurisdictional issue that an appellate court cannot ignore."). Further, Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For the reasons stated below, Nebraska's limited statutory waivers of its sovereign immunity do not apply to Plaintiff's contract and tort claims. On the face of the Amended Complaint, Plaintiff failed to comply with the applicable statutes which waive sovereign immunity for his implied contract claims. Further, Plaintiff alleges tort claims which are not allowed against the State under the STCA. Thus, these claims are barred by the State's common law sovereign immunity. Plaintiff's contract claims are addressed first, followed by his tort claims.

**1. Plaintiff does not state specific facts to show compliance with the SCCA for any claims against the State itself.**

Plaintiff does not allege specific facts to show compliance with the requirements of the SCCA to bring his implied contract claims against the State. First, Plaintiff does not allege there was ever *any* contract—express or implied—between Plaintiff and the State itself. *See generally* Filing No. 16. Without specific factual allegations showing a contract with the State itself, Plaintiff cannot show he met the statutory requirements to bring a contract claim. Second, Plaintiff's contract claims are for alleged breaches of implied contract. *See id.* at 32–33. Plaintiff cannot have complied with the SCCA under a theory of implied contract.

"For purposes of the [SCCA], unless the context otherwise requires: (1) Contract claim shall mean a claim against the state involving a dispute regarding a contract between the State of Nebraska or a state agency and the claimant[.]" Neb. Rev. Stat. § 81–8,303(1). The SCCA requires a copy of the contract be filed with the State Risk Manager as part of any contract claim.

> All contract claims shall be filed with the Risk Manager in the manner prescribed by the State Claims Board. Contract claims shall be filed on forms provided by the Risk Manager, and each claimant *shall include at least* the following information: (1) *A copy of the contract allegedly breached*; (2) the manner in which the contract was allegedly breached; and (3) the damages incurred as a result of the alleged breach.

Neb. Rev. Stat. § 81–8,304 (emphasis added).

Under Nebraska law, an "implied contract" is, by definition, one in which the contractual terms *have not* been expressed in words:

> The term "implied contract" refers to that class of obligations that arises from mutual agreement and intent to promise, when the agreement and promise *have simply not been expressed in words*. An implied contract arises where the intention of the parties *is not expressed* but where the circumstances are such as to show a mutual intent to contract.

*City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 282 Neb. 848, 856–57, 809 N.W.2d 725, 737 (2011) (emphasis added).

Here, both of Plaintiff's contract claims are for breaches of "implied" contract. *See* Filing 16 at 32–33. Because implied contracts are, by definition, not expressed in words, Plaintiff cannot have submitted a "copy of the contract allegedly breached" as required under section 81–8,304(1). Plaintiff's formulaic recitation of the statutory requirements for filing a claim under the SCCA does not meet the pleading standard. *See* Filing No. 16 at 22–23. *See also Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do[.]").

Despite Plaintiff's assertion that the State is the "respondent" to Plaintiff's SCCA claims (*see* Filing No. 16 at 3), Plaintiff again alleges no contract with the State itself. *See generally* Filing No. 16. Plaintiff asserts in his Amended Complaint that Dean Brummond "specifically requested students hand sign a copy of the College of Law's honor code and said, 'This is a contract.'" *See id.* at 15. Plaintiff also seems to indicate the "student codes of conduct" are part of what gives rise to his implied contract claims. *See id.* at 33. However, even assuming the honor code was a contract and that Plaintiff submitted a copy thereof with his claim, it is a contract with the Board, not the State itself. *See id.* at 32–33.

Because Plaintiff states no specific facts to show that he had any contract with the State itself, that or he complied with the statutory requirements of the SCCA, his implied contract claims against the State itself are barred by sovereign immunity.

**2. Plaintiff did not comply with the statutory requirements for bringing an implied contract claim against the State.**

Even apart from the SCCA, Plaintiff failed to follow the necessary jurisdictional requirements for an implied contract claim against the State. "The state may be sued in the district court of Lancaster County in any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, or founded upon any law of the state." Neb. Rev. Stat. § 25–21,206. "The complaint in such a case *shall* be as provided in section 25–21,202[.]" *Id.* (emphasis added).

> The claimant *shall, in all cases,* file a complaint setting forth (1) the facts out of which the claim originally arose; (2) the action of the Legislature, or of any department of the government thereon, if any such has been had; (3) what person or persons is the owner or are the owners thereof, or in anywise interested therein; (4) that no assignment or transfer of the same, or any part thereof, or interest therein, has been made, except as stated in the complaint; and (5) that the claimant is justly entitled to the amount claimed therein from the state after allowance of all just credits and setoffs.

Neb. Rev. Stat. § 25–21,202. This limited waiver of the State's sovereign immunity for implied contract claims is effective *only if* the statutory requirements are met. *See Burke v. Bd. of Trs. of Nebraska State Colleges*, 302 Neb. at 507, 924 N.W.2d at

314. When a complaint does not *factually* address all the requirements of section 25–21,202, a plaintiff cannot rely on this section to waive the State's sovereign immunity. *Id.*, 302 Neb. at 506–07, 924 N.W.2d at 313–14.

Here, despite amending his complaint, Plaintiff does not *factually* address the requirements of Neb. Rev. Stat. § 25–21,202. *See generally* Filing No. 16. Plaintiff makes conclusory assertions that there has been no assignment or transfer of any claim and that he is justly entitled to the amount claimed after applicable allowances. *Id.* at 23. However, Plaintiff states no *facts* from which any claim against *the State itself* arose. *See* Neb. Rev. Stat. § 25–21,202(1). Once again, this is only a formulaic recitation of the statutory requirements for filing a claim under Neb. Rev. Stat. § 25–21,202. *See Twombly*, 550 U.S. at 555. Plaintiff does not allege *any facts* showing a contract with the State, or any amount owed to him by the State.

Because Plaintiff alleges no specific facts to show he had any contract with the State, he cannot show any applicable waiver of the State's sovereign immunity to his implied contract claims. Thus, Plaintiff's implied contract claims are barred by sovereign immunity and should be dismissed with prejudice.

**3. Plaintiff's tort claims are barred by sovereign immunity because they arise from intentional torts which are exempt from the STCA.**

First, except for naming the State in the heading of Count IV, Plaintiff does not raise his "Negligence / Negligent Supervision" claim against the State itself. *See* Filing No. 16 at 33–35. Even still, Plaintiff's tort claims asserted against the State

for negligent supervision over the Board and Individual Defendants arise from intentional torts which are not actionable under the STCA. The STCA is a limited waiver of the State's sovereign immunity for some, but not all, tort claims against the State. *See Joshua M. v. State*, 316 Neb. 446, 459, 5 N.W.3d 454, 466 (2024). Claims exempted from the STCA are barred by the State's sovereign immunity. *Id.* The relevant exemption here is the exception for certain intentional torts: "The [STCA] shall not apply to . . . (4) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contract rights[.]" Neb. Rev. Stat. § 81–8,219(4). Simply framing claims as negligence in preventing these harms or negligent supervision does not avoid the exemption. *See Joshua M.*, 316 Neb. at 464–65, 470–72, 5 N.W.3d at 468–69, 472–73 (citations omitted).

In *Joshua M.*, three siblings who had been placed into the foster care system as children brought tort claims against the State and the Nebraska Department of Health and Human Services ("DHHS"). 316 Neb. at 448–49, 5 N.W.3d at 460. The siblings sued the State and DHHS for negligence in "recommending and supervising" the siblings' foster care placement and not removing them from that placement when DHHS "knew or should have known" the siblings had suffered physical and sexual abuse at the hands of their foster parents. *Id.*, 316 Neb. at 449, 5 N.W.3d at 460. The trial court rejected DHHS's motion for directed verdict on the grounds of sovereign immunity but held DHHS had not breached its duty of care to the siblings. *Id.*, 316 Neb. at 449–50, 5 N.W.3d at 460. The siblings appealed only

that determination. *Id.*, 316 Neb. at 450, 5 N.W.3d at 460.

On appeal, DHHS argued the siblings had not alleged any harm that did not arise from an assault or battery within the meaning of section 81–8,219(4). *Id.*, 316 Neb. at 472, 5 N.W.3d at 473. The siblings argued that their claims were outside of section 81–8,219(4) for two reasons. *Id.* First, the siblings argued the breach of duty occurred prior to the acts of abuse because the duty of care was breached as soon as the siblings were placed in the dangerous foster care situation. *Id.* Second, the siblings argued that even if section 81–8,219(4) barred their claim, they should still be allowed to recover based on trial evidence showing they had suffered factually distinct harms of mental and emotional abuse separately from the alleged sexual and physical abuse. *Id.*, 316 Neb. at 473–74, 5 N.W.3d at 474.

In its decision on appeal, the Nebraska Supreme Court reviewed its prior cases on the issue of when a tort claim arises out of assault or battery within the meaning of the STCA, or the Nebraska Political Subdivision Tort Claims Act which contains similar language relating to political subdivisions. *See id.*, 316 Neb. at 461–68, 5 N.W.3d at 466–71. In one line of cases, beginning with *Koepf v. York Cnty.*, the Nebraska Supreme Court had previously held that negligence claims against the State or a political subdivision for acts of assault by third parties were not based on assault or battery, but were separate acts of negligence and, thus, actionable. *See id.* 316 Neb. at 462–63, 5 N.W.3d at 467–68 (citing *Koepf v. York Cnty.*, 198 Neb. 67, 251 N.W.2d 866 (1977), *overruled by Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024); then citing *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb.

79, 727 N.W.2d 447 (2007), *overruled by Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020)). In another line of cases, beginning in 2005 with *Johnson v. State*, the Nebraska Supreme Court adhered to strict construction of waivers of sovereign immunity and held claims framed as negligence for failure to prevent harm from the underlying assault or battery arose out of assault or battery and were barred by section 81–8,219(4). *See id.*, 316 Neb. at 463–68, 5 N.W.3d at 468–71 (citing *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005) (remaining citations omitted).

The Court reconciled this conflicting caselaw by expressly overruling *Koepf v. York Cnty.* and similar cases holding the acts of negligence were actionable. *Id.* 316 Neb. at 470–41, 5 N.W.3d at 472. The Court then rejected both of the siblings' arguments, holding their claims still arose out of the underlying assault and battery relating to the physical and sexual abuse. *See id.*, 316 Neb. at 472–73, 5 N.W.3d at 473–74. As to the siblings' first argument about the timing of the breach of duty, the Court said this "semantic reframing" does not change the nature of the claim. *See id.*, 316 Neb. at 472–73, 5 N.W.3d at 473. Such alleged breaches necessarily come before an assault or battery. *Id.*, 316 Neb. at 473, 5 N.W.3d at 473. This was the case in multiple decisions including and following *Johnson*, yet the Court "focused on the nature of the personal injury claim, rather than the allegation of negligence asserted against the government" and "concluded the claim arose out of the assault or battery and thus fell squarely within the scope of the exemption." *Id.* The Court also rejected the siblings' second argument about the evidence at trial because

neither the complaint nor the claims presented at trial related to anything other than the physical and sexual assaults. *Id.*, 316 Neb. at 473–76, 5 N.W.3d at 474–75. Therefore, the court concluded the siblings' claims fell squarely within the exemption in section 81-8,219(4) and were therefore barred by sovereign immunity. *Id.*, 316 Neb. at 478–79, 5 N.W.3d at 476–77.

Here, Plaintiff's cause of action against the State for "Negligence / Negligent Supervision" under the STCA is likewise barred by sovereign immunity because it arises from claims sounding in "malicious prosecution, abuse of process, libel, slander, or interference with contract rights[.]" Neb. Rev. Stat. § 81–8,219(4). Plaintiff's assertion of "Negligence / Negligent Supervision" against the State like the Amended Complaint more generally, lacks allegations against the State itself. Filing No. 16 at 33–35. Nevertheless, the alleged negligent supervision relates to Plaintiff's other tort claims against the Individual Defendants. *Id.* Those claims are "Negligence - Hazing by Recklessness" against the Individual Defendants (*id.* at 35–36), defamation by Professor Jefferis (*id.* at 42), and civil conspiracy against the Individual Defendants (*id.* at 42–43). None of these are actionable against the State under section 81–8,219(4).

Plaintiff's "hazing" assertions, which are also part of his negligent supervision theory (*see id.* at 34), also sound in intentional torts exempted from the STCA. Plaintiff specifically relies on the definition of hazing found in Neb. Rev. Stat. § 28–311.06(1). *Id.* at 35. That section defines "hazing" as:

> any activity by which a person intentionally or recklessly endangers the physical or mental health or safety of an individual for the purpose

> of initiation into, admission into, affiliation with, or continued membership with any organization. Such hazing activity includes whipping, beating, branding, an act of sexual penetration, an exposure of the genitals of the body done with intent to affront or alarm any person, a lewd fondling or caressing of the body of another person, forced and prolonged calisthenics, prolonged exposure to the elements, forced consumption of any food, liquor, beverage, drug, or harmful substance not generally intended for human consumption, prolonged sleep deprivation, or any brutal treatment or the performance of any unlawful act which endangers the physical or mental health or safety of any person or the coercing of any such activity.

Neb. Rev. Stat. § 28–311.06. Again, there are no allegations of any act which constitutes "hazing" as defined in section 28–311.06 whatsoever. *See generally* Filing No. 16. Plaintiff's civil conspiracy claim also includes this "hazing." *See id.* at 43. Even if Plaintiff had alleged any acts constituting "hazing," such acts necessarily sound in assault, battery, and/or false imprisonment and are not actionable against the State under Neb. Rev. Stat. § 81–8,219(4).

Plaintiff' explicitly raises a defamation claim against Professor Jeffris for an alleged false accusation that Plaintiff used artificial intelligence in an assignment and asserts the State's negligent supervision includes "capricious academic evaluations[.]" *See id.* at 34, 42. Plaintiff bases his negligent supervision claim in part on this underlying act. This is a claim arising from alleged slander or libel which is not actionable under the STCA. *See* Neb. Rev. Stat. § 81–8,219(4).

Because Plaintiff's "Negligence / Negligent Supervision" claim against the State is a claim "arising out of" claims exempted from the STCA, this claim is

barred by sovereign immunity. *See Joshua M.*, 316 Neb. at 459, 5 N.W.3d at 466. Therefore, Plaintiff's "Negligence / Negligent Supervision" claim against the State should be dismissed with prejudice.

**C. Plaintiff's ADA claims against the State fail as a matter of law.**

"[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). Here, Plaintiff pleads no *specific facts* whatsoever to show the State *actually* violated his Fourteenth Amendment rights. Because Title II only abrogates a state's sovereign immunity for actual violations of the Fourteenth Amendment, and Plaintiff has not factually alleged any violation of the Fourteenth Amendment by the State itself, Title II does not waive the State's sovereign immunity. Because Plaintiff's Title II claims against the State are barred by sovereign immunity, they should be dismissed with prejudice.

**II. Plaintiff lacks standing to sue the State of Nebraska.**

Plaintiff has alleged no facts to show an injury on fact which is fairly traceable to the State as a separately named Defendant. "Article III standing to sue *each defendant* also requires a showing that *each defendant* caused his injury and that an order of the court against *each defendant* could redress the injury." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Lujan*, 504 U.S. at 560–61) (emphasis added).

Even assuming, without conceding, Plaintiff suffered an injury in fact, no

such injury is fairly traceable to the State itself. Even if Plaintiff otherwise stated a claim for any or all of his causes of action, all such claims are stated against named Defendants other than the State. *See generally* Filing No. 16. The only allegations that the State itself had any involvement in the actions complained of surround Plaintiff's tort and contract claims filed with the Risk Manager. *See id.* at 22–23. Plaintiff's assertions about putting the State "on notice" do not make his alleged injuries traceable to the State. *See id.* at 30. That Plaintiff's claims were denied by the Claims Board or objected to by the Board does not mean the State caused Plaintiff's injuries. *See id.* at 23.

Because Plaintiff alleges no facts to show any injury in fact which is fairly traceable to the State as a named Defendant, Plaintiff lacks standing to bring his claims against the State. The redundancy of bringing claims against the State, the Board as a state entity, and the Individual Defendants in their official capacities is addressed in Section III(C) below.

## III. Plaintiff alleges no facts against the State of Nebraska.

The State should be dismissed from all claims against it in Plaintiff's Amended Complaint. To state a claim, a complaint must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. Pr. 8(a)(2). Here, there are simply no facts alleged to support any of Plaintiff's causes of action against the State itself. The remaining claims to be addressed are those under Title VI of the Civil Rights Act and under the ADA and Rehabilitation Act. Finally, all of Plaintiff's claims against the State are redundant to the claims

against the Board or the Individual Defendants in their official capacities and the State should be dismissed even if Plaintiff's claims are allowed to proceed. These are addressed in turn.

**A. Plaintiff stated no claims against the State under Title VI.**

"Title VI provides that 'no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Mungai v. U. of Minnesota*, 141 F.4th 959, 964 (8th Cir. 2025) (quoting 42 U.S.C. § 2000d). For Title VI claims, the Eighth Circuit has adopted a "deliberate indifference" standard. *See id.*, 141 F.4th at 964. Thus, for the State to incur liability under Title VI, Plaintiff must allege specific facts which show the State *itself* was "(1) deliberately indifferent (2) to known acts of harassment (3) that occurred at a location and by an individual under its control." *See id.* (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47 (1999)). "Deliberate indifference is a high standard." *Id.* at 965. "The harassment must be so severe, pervasive and objectively offensive that it deprives the victim of 'access to the educational opportunities or benefits provided by the school.'" *Id.* "The plaintiff must provide notice of the harassment to an 'appropriate person,' which means 'an official of the recipient entity with authority to take corrective action to end the discrimination.'" *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Here, Plaintiff has alleged no facts to show the State was deliberately indifferent to any known act of harassment. The only facts alleged in the Amended

Complaint about the State's knowledge (separately from other Defendants) are related to Plaintiff's tort and contract claims filed with the Risk Manager. *See* Filing No. 16 at 22–23. Plaintiff alleges he filed tort claims pursuant to the STCA on March 27, 2026, and a contract claim pursuant to the SCCA on June 4, 2026, with the Risk Management Office. *Id.* at 22. Even assuming the other Defendants were under the control of the State, and the State was "on notice" when Plaintiff filed his tort claims March 27, 2026, Plaintiff has not alleged he made the necessary reports to an appropriate person at the State with authority to take corrective action.

The Risk Management Program operates within a separate state agency, the Department of Administrative Services, and is overseen by the Risk Manager. *See* Neb. Rev. Stat. § 81–8,239.01. The Risk Manager, under the Risk Management program, identifies and mitigates areas of the State's exposure to the risk of loss in areas including state insurance, workers' compensation, tort claims, and contract claims. *Id.* The Risk Manager also administers the claims processes under the SCCA and STCA. *See* Neb. Rev. Stats. §§ 81–8,212 ("All tort claims shall be filed with the Risk Manager") and 81–8,304 ("All contract claims shall be filed with the Risk Manager"). Neither the Risk Manager nor the Risk Management Program are appropriate "persons" to receive a report of harassment or discrimination. Neither have the authority to take corrective action to end any discrimination. *See* Neb. Rev. Stat. § 81–8,239.01(3) (authority and responsibility of the Risk Manager).

Finally, even if the State itself knew about the acts complained of and the Risk Manager were somehow the appropriate person to receive a report, the

allegations in the Amended Complaint do not show harassment that is "so severe, pervasive and objectively offensive that it deprives the victim of 'access to the educational opportunities or benefits provided by the school.'" *Mungai*, 141 F.4th at 965 (quoting *Davis ex rel. LaShonda D.*, 526 U.S. at 650).

Because Plaintiff has not alleged he reported the alleged discrimination to a person with the State with authority to take corrective action to end any discrimination, and because the Amended Complaint does not allege any act of discrimination so severe, pervasive and objectively offensive that it deprived Plaintiff of any access or opportunities, Plaintiff has not alleged deliberate indifference by the State. Therefore, Plaintiff's Title VI discrimination claims against the State should be dismissed with prejudice.

**B. Plaintiff's ADA and Rehabilitation Act claims against the State fail as a matter of law.**

As stated above, because Plaintiff pleads no specific facts to show the State actually violated his Fourteenth Amendment rights, he has not shown Title II abrogates the State's sovereign immunity here. *See U.S. v. Georgia*, 546 U.S. 151, 159 (2006). Even apart from sovereign immunity, Plaintiff failed to state a claim against the State for violations of the ADA or Section 504 Rehabilitation Act. To state a claim under the ADA or Rehabilitation Act, Plaintiff must allege facts showing:

> (1) he is a qualified individual with a disability; (2) the defendant is a place of public accommodation (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes); and (3) by reason of his disability, the defendant excluded him from participation in or denied

> him the benefits of the services, programs, or activities offered by the defendant, or subjected him to discrimination.

*See Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, 183 F.4th 580, 589 (8th Cir. 2026). Stating such a claim necessitates that Plaintiff be otherwise qualified for the program. *See id.*

Here, beginning with the third element, Plaintiff describes no conduct of the State itself in his Amended Complaint which excluded him from participation in the law program at the College of Law because of his disability. *See* generally Filing No. 16. Plaintiff himself alleges that he in fact received various accommodation and counseling from the University's Counseling and Psychological Services. *See id.* at 11. Plaintiff even alleges the State "openly recognized [Plaintiff's] need for accommodation *by directly providing and expanding his access* to institutional mental health therapy sessions for the Plaintiff." Filing No. 16 at 41 (emphasis added).

Plaintiff's allegations also do not show that any benefit of the law program was denied to Plaintiff *by the State itself* because of his disability. As alleged in the Amended Complaint, Plaintiff notified Dean Brummond of his mental health issues in a meeting on January 16, 2026. *Id.* at 8–9. Many of the acts Plaintiff complained of occurred prior to this disclosure. *See generally id.* Moreover, Plaintiff himself alleges these accommodations were decided upon at his meeting with Dean Brummond and another University employee on January 20, 2026. *Id.* at 10–11.

Further, Plaintiff's own allegations demonstrate he was not otherwise qualified to continue pursuing his legal education at the College of Law. Plaintiff

received notice from Dean Brummond in January 2026 that he needed to maintain a minimum grade point average of 2.0 to remain enrolled at the College of Law and that his first semester grades placed him at risk of academic dismissal. *Id.* at 8. By the end of his first semester, Plaintiff had received an "F" grade in his torts class and a "C-" grade in contracts. *Id.* at 19–20. Plaintiff also received a "D" grade in his second semester civil procedure class. *Id.* at 20. Plaintiff was dismissed from the College of Law after failing to maintain the minimum grade point average for continued enrollment. *See id.* at 16. Without maintaining minimum grade required for continued admission, Plaintiff is not otherwise qualified for the law program and cannot state a claim for discrimination against the State. Further, Plaintiff's mechanism to demonstrate he should be given another opportunity is through a petition for readmission as stated by Dean Brummond. *See id.* at 16–19. Plaintiff does not allege he pursued this avenue. *See generally id.* Rather, Plaintiff asked Dean Brummond about alternatives to the readmission process, then filed tort and contracts claims with the Risk Manager to "fully" exhaust his administrative remedies. *See id.* at 22–23.

Finally, even if the accommodations Plaintiff received were insufficient and he was otherwise qualified, there are simply *no specific facts* alleged which plausibly show *the State itself* is responsible in any way for any discrimination against Plaintiff. Plaintiff's own allegations are that he received mental health treatment when he raised the issues with the College of Law. To the extent he

notified the State outside of the University system, his tort claims filed with the Risk Management Program are not the proper method to report ADA violations.

For these reasons, Plaintiff has not sufficiently alleged any claim of disability discrimination against the State and these claims should be dismissed.

**C. The State should be dismissed as a redundant Defendant.**

As stated previously, Plaintiff brought his claims against the Board, the Individual Defendants in their official capacities, and the State as separately named Defendants. The Board is a state agency. *Doe v. Bd. of Regents of Univ. of Nebraska*, 280 Neb. 492, 510, 788 N.W.2d 264, 281 (2010), *overruled on other grounds by Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). In general, naming both an official in their official capacity and the public entity employing the official are redundant claims for which the official will be dismissed while the public entity remains. *See, e.g., King v. City of Crestwood, Missouri*, 899 F.3d 643, 650 (8th Cir. 2018). The same reasoning applies to naming both the State and a state agency. Notably, some courts in this circuit have dismissed a state or a state agency, rather than the official, as redundant defendants when the lawsuit is properly brought against the official in their official capacity. *See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1003–04 (D. Minn. 2016); *Thomas v. Missouri*, 2012 WL 1554919, at *4–5 (E.D.Mo. April 30, 2012)).

In *Guggenberger*, the District of Minnesota found that allowing claims relating to the administration of Minnesota's Medicaid program against both the Minnesota Department of Human Services and the commissioner of that agency in her official capacity in the same litigation is redundant. 198 F. Supp. 3d at 1003–04.

However, a Minnesota statute specifically named the commissioner as the "state agency" responsible for administering Minnesota's Medicaid program. *Id.* at 1003. The court therefore dismissed the Minnesota Department of Human Services as the redundant defendant in that case. *Id.* at 1003, 1036.

Here, in the event any portion of Plaintiff's Amended Complaint survives beyond the pleadings stage, any redundancy should be resolved by dismissing all claims against the State. Plaintiff's allegations relate to the Individual Defendants and the Board, rather than the State itself. Further, the Board has its own capacity to sue and be sued. *See Libault v. Mamo*, No. 4:22-CV-3096, 2023 WL 3011259, at *4 (D. Neb. Mar. 20, 2023), *aff'd,* No. 23-1802, 2023 WL 6532621 (8th Cir. Oct. 6, 2023) (citing Neb. Const. art. VII, § 10; then citing Neb. Rev. Stat. § 85–105)) ("The Nebraska Constitution vests the authority to govern the University of Nebraska in the Board of Regents, which, under Nebraska law, is 'a body corporate' and 'may sue and be sued.'"). Therefore, this Court should hold that, like the commissioner in *Guggenberger*, the Board is the proper party to these claims should they be allowed to move forward and dismiss all redundant claims against the State itself.

## CONCLUSION

For the reasons stated above, Defendant State of Nebraska respectfully requests the Court grant its Motion to Dismiss all claims against it with prejudice.

Respectfully submitted this 6th day of November 2026.

STATE OF NEBRASKA, Defendant.

By: MICHAEL T. HILGERS, #24483
Nebraska Attorney General

By: *_/s/ Raymond P. Daugherty_*

Raymond P. Daugherty, NE #27850
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Phone: (402) 471-2683
Fax: (402) 471-4725
raymond.daugherty@nebraska.gov

*Attorneys for Defendant State of Nebraska.*

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), I hereby certify that this brief is 30 pages in length and contains 7,878 words as counted by the Microsoft Word for Microsoft 365-word processing software used to generate this brief. The word count function of this software was applied to include all text, including the caption, headings, footnotes, and quotations.

By: *_/s/ Raymond P. Daugherty_*
Raymond P. Daugherty, NE #27850
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, a true and accurate copy of this Brief in Support of Defendant State of Nebraska's Motion to Dismiss was served upon the Plaintiff by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which sent a copy to Plaintiff.

By: *_/s/ Raymond P. Daugherty_*
Raymond P. Daugherty, NE #27850
*Assistant Attorney General*